UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NUMBER: 15-153 |
| GEOFFREY RICKETS, ET AL. | SECTION: "L"(5) |

**ORDER AND REASONS**

Before the Court are the following motions, each of which was filed jointly by Defendants, Geoffrey Ricketts, Marla Ricketts, Sunyup Kim, and Samuel Kim: Motion for Discovery and Inspection (rec. doc. 44); Motion for Early Disclosure of Jencks Act Material (rec. doc. 45); Motion for Disclosure and Interview of Confidential Informants (rec. doc. 46); and, Motion to Compel Return of Privileged Documents. (Rec. doc. 47). The Government opposed each of these motions (rec. docs. 56-59) and the Defendants filed a reply memorandum as to the Motion to Compel Return of Privileged Documents. (Rec. doc. 62). On September 16, 2015, the Court held oral argument on all four motions, providing counsel for all Defendants and the Government the opportunity to be heard. (Rec. doc. 64).

After careful consideration of the pleadings and the arguments of counsel as to each motion, the Court rules as follows.[1]

I.   Motion for Disclosure and Interview of Confidential Informants

In this motion, Defendants seek information pertaining to "confidential informants" upon which the Government has relied, citing *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct.

---

[1] The Court will discuss these motions somewhat out of the order in which they were filed.

623 (1957) and *United States v. Davis*, 443 Fed.Appx. 9 (5th Cir. 2011), *cert. denied* __ U.S. __, 132 S.Ct. 1070 (2012).  In *Roviaro*, the Supreme Court explained

> The purpose of the [informer's] privilege is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

(*Id.* at 59, 77 S.Ct. at 627).

In this case, the Defendants argue that the confidential informants subject to the *Roviaro/Davis* analysis are "Medicare beneficiaries, former employees of the defendants, doctors, and other individuals who appear to be participants and/or material witnesses to the charged misconduct." (Rec. doc. 46 at p. 3).  In response to the Defendants' arguments, the Government states that, while it may have relied in part on the types of persons listed by Defendants, none of them are confidential informants "as that term is recognized in the relevant case law." (Rec. doc. 57 at p. 5).

A review of the pleadings reveals the Government's position to be correct.  Indeed, defense counsel conceded as much at the hearing: "[I]s this the classic confidential informant?  No.  Is this a government witness purely that is going to appear later on the witness list with Jencks Act?  No.  These are people somewhere in between." (Rec. doc. 65 at p. 6).

Defense counsel may be correct that these witnesses[2] fall somewhere in between traditional confidential informants and Jencks Act witnesses, but the pending motion seeks

---

[2] The Government argued in brief and at the hearing that this motion was no more than a premature request for a witness list.  The Defendants' position on whether any of these "informants" would be witnesses is something of a moving target.  They argued in brief that "[i]t is anticipated that many of those individuals will be government witnesses at trial," (rec. doc. 46 at p. 1) but at the hearing stated that "[m]any of these people

2

disclosure of their identities only pursuant to the *Roviaro/Davis* rubric pertaining to confidential informants. That their identities are unknown to the defense does not make these witnesses/informants <u>confidential</u>, nor for that matter does anything else in this record. Accordingly, this motion is **denied**.

II.     Motion for Early Disclosure of Jenks Act Material

In this motion, Defendants state that "[i]t is in the best interest of justice to have the Jencks Act materials turned over fourteen (14) days prior to trial." (Rec. doc. 45-1 at p. 2). The Government objects to early disclosure, arguing that, while it is <u>bound</u> by the Jencks Act only to produce such material after a witness's direct testimony, it would agree to produce such information 48 hours prior to trial if each Defendant would affirm that the Government's agreement would in no way prejudice the Government in its continued investigation and preparation for trial. (Rec. doc. 59 at p. 4).

There is no authority in this circuit that would require this Court to order the early disclosure sought here by Defendants and it is not altogether clear whether the Government agrees that the Court possesses the authority to order such disclosure in the exercise of its discretion. In any event, it appears to the Court that developments subsequent to the filing of these pleadings appear to have mooted this motion. The District Judge recently entered an agreed-to scheduling order (rec. doc. 68) that calls for production of Jencks Act material no later than the Wednesday prior to trial. This appears to reflect a compromise between

---

are not going to be called. They're not going to appear at trial." (Rec. doc. 65 at p. 6). As explained below, it matters not which of these is true. If the individuals are witnesses, their identities will be disclosed pursuant to the scheduling order recently issued in the case. (Rec. doc. 68). If the Government determines they will not be called as witnesses, disclosure of their identities is subject to the requirements of Rule 16 and *Brady v. Maryland*.

3

the Defendants and the Government and this Court declines to upset or revisit the deadlines set forth in the District Judge's order.

Accordingly, this motion is **denied.**

III.     Motion for Discovery and Inspection

In this motion, the Defendants seek the following categories of documents and information:

- The names, addresses, and patient records of beneficiaries referenced in paragraphs 41, 42, 46, 50, and 52 of the indictment identified as J.H., R.W., P.D., B.B. and C.S. and their relevant Medicare billing records.  (Rec. doc. 44 at p. 2).
- A list and description of each Medicare beneficiary that the Government maintains forms the basis of a fraudulent claim to Medicare in this case, and for each beneficiary the relevant Medicare billing records that the Government will seek to introduce in its case-in-chief.  (*Id.*).
- The names of call centers, call center operators, a call center manager, employees and agents of Care Concepts referenced in paragraphs 29-33, 41, 42, 44, and 52 of the indictment.  (*Id.* at p. 1-2).
- The names of "known" co-conspirators of Marla Ricketts referenced in paragraphs 49 and 50 of the indictment.  (*Id.* at p. 2).
- A list of every payment by the defendants or Care Concepts or Choice which the government alleges constitutes an illegal kickback under 42 U.S.C. § 1320 a-7(b)(2)(A).  (*Id.*).

The Court will address these requests in order.

The first request seeks the names, addresses, and patient records of specific beneficiaries identified as J.H., R.W., P.D., B.B. and C.S. These are the beneficiaries listed (by initials) in the indictment. In response, the Government affirmatively states that it provided the names of these individuals in an email to defense counsel on September 1, 2015. (Rec. doc. 58 at p. 2). Defendants do not dispute this contention. The Government further states that "the addresses and patient files are available in the discovery materials" previously produced to Defendants. (*Id.*).

Because the individuals have been named by the Government and there is no indication that the additional information requested by the Defendants as to those specific persons is not in the possession of the Defendants, the motion is **denied** as to this request.

The second request[3] seeks similar information as to a broader class of beneficiaries as that actually identified in the indictment. Essentially, the Defendants seek the same identifying information and documentation as to any beneficiaries who are <u>unnamed</u> or otherwise unidentified in the indictment. Citing the recent decision in *U.S. v. Morad*,[4] Defendants argue that, in order to prepare a defense against the Government's claims, they must be assured that there are no beneficiaries <u>in addition to</u> those identified in the indictment upon which the Government might build its case at trial.

In *Morad*, the Defendant and his co-conspirators were indicted for conspiracy to commit health care fraud in violation of 18 U.S.C. § 1347 and conspiracy to pay and receive health care kickbacks in violation of 18 U.S.C. § 371. (*Id.*). The Defendant there sought "a list and description of each Medicare beneficiary that the Government maintains forms the basis

---

[3] The Court has re-ordered the requests from the Defendants' brief for ease of analysis.
[4] Rec. doc. 86 in No. 13-CR-101.

5

of a fraudulent claim to Medicare." (*Id.* at p. 2). The Government resisted, contending that the Defendant was actually seeking a bill of particulars (an argument repeated by the Government in this case) and objecting that it did not want to be "tied down" by the requested production to specific patients before discovery was complete in that case.

After citing Rules 12 and 16 of the Federal Rules of Criminal Procedure, the *Morad* Court found that the Defendant in that case was not seeking a bill of particulars, observing:

> Here, the Court does not find that Morad seeks a bill of particulars. He seeks only a list and description of each Medicare beneficiary that the government maintains forms the basis of a fraudulent claim to Medicare and the Medicare billing records. He contends that this information is material to the preparation of his defense. The Court finds this argument persuasive under the factual circumstances of this case given the length of the alleged conspiracy and the amount of money involved. If the government has the identity of a Medicare Beneficiary that will be material to the preparation of Morad's defense or that the government will use in his case-in-chief at trial, Morad is entitled to that information under Rule 16. The Court does not find that the government will be tied down by the identities that it will produce. The parties have not yet produced witness lists, and until that time, the parties are free to add and/or to discard any individual witness should they so desire.

(*Id.* at pp. 4-5).

In the present case and motion, the Government argues that this case is distinguishable from *Morad* due to the presence of "executions" as to the various beneficiaries.[5] The Court accepts this statement as true (as the Defendants have not disputed it), but it is still not at all clear why the Defendants should not be apprised, under the

---

[5] The Government has never articulated to the Court what this means or exactly <u>why</u> it is important enough in this case to distinguish it from *Morad* in this respect.

6

reasoning of the *Morad* Court and the facts of this case, of the identity of every Medicare beneficiary that the Government intends to build its case upon.

Federal Rule of Criminal Procedure 16 lists the types of information that the Government must disclose to defendants during discovery. Rule 16(a)(1)(E) provides in pertinent part that:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . papers, documents, data . . . if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case in chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.
>
> Fed. R. Crim. P. 16(a)(1)(E) (emphasis added).

Under this rule, the Government must identify specifically which items it intends to use in its case-in-chief at trial. *See id.*; *see also United States v. Anderson*, 416 F. Supp. 2d 110, 115 (D.D.C. 2006). It may not simply identify a large number of documents that it may or may not seek to introduce at trial. *See United States v. O'Keefe*, No. 06-CR-249, 2007 WL 1239207 at *2 (D.D.C. Apr. 27, 2007). Defendants are entitled to the same evidence under Federal Rule of Criminal Procedure 12(b)(4)(B).

It is clear to the Court that, as to Defendants' request for the names and records of "each Medicare beneficiary that the government maintains forms the basis of a fraudulent claim to Medicare in this case, and for each beneficiary the relevant Medicare billing records that the government will seek to introduce in its case-in-chief," the Defendants are covering their bases – with *Morad* as a guide – to ensure that the Government does not intend to use beneficiaries not identified in the indictment to "form[] the basis of a fraudulent claim to

7

Medicare in this case." (Rec. doc. 44 at p. 2). This is an appropriate endeavor under the circumstances.[6]

Having said that, the Government insists that it has already provided (by way of email to defense counsel) such information for the beneficiaries identified by their initials in the indictment. (Rec. doc. 58 at p. 2). Further, at the hearing, counsel for the Government stated that the beneficiaries already identified in that email comprised all of the beneficiaries whose identities would be responsive to Defendants' requests. (Rec. doc. 65 at p. 12)("The beneficiaries have all been identified.").

It would therefore appear that, <u>at this time</u>, there is no more information to produce and the request for this particular category of information should be **denied as moot**. <u>However</u>, consistent with the Court's ruling in *Morad*, if the Government later identifies a Medicare beneficiary who will be material to the preparation of Defendants' defense or that the Government will use in its case-in-chief at trial, Defendants are entitled to that information under Rule 16 and that information should be produced expeditiously after being so identified by the Government.

Turning to the Defendants' request for names of call centers, call center operators, a call center manager, employees, and agents of Care Concepts and the names of "known" co-conspirators of Marla Ricketts, the outcome is different.

In Defendants' brief, there is simply no argument as to why the reasoning of the *Morad* Court as to Medicare beneficiaries should be extended to these classes of individuals. They

---

[6] The Court notes that the *Morad* Court based its ruling at least in part on the "the length of the alleged conspiracy and the amount of money involved." *Morad*, rec. doc. 86 at pp. 4-5. In the present case, the Government alleges a conspiracy that lasted over six years and involves over $30 million in allegedly fraudulent claims.

8

simply state in a single sentence – without any explanation –that this information is material to the defense.  (Rec. doc. 44-1 at p. 4).  As a <u>general</u> proposition, now that the information has been requested, if it exists and if it is, indeed, material to the defense, it should be disclosed under Rule 16.  However, to the extent the Defendants seek the identity of individuals that the Government intends to call as witnesses, this Court interprets the District Judge's scheduling order to specifically provide that such information be disclosed, not during the current discovery period, but seven days prior to trial.  (Rec. doc. 68 at p. 4).  So, to the extent there are individuals who fit the description of those requested, who the Government determines will <u>not</u> be witnesses, and whose identities are material to the defense, they should be identified expeditiously.

The Court also notes that, as it pertains to Defendants' request for names of call centers, call center operators, and a call center manager, the Government appears to have provided that information at the hearing.  Defense counsel expressed concern at the hearing that there were "call centers all over . . . the world" that could possibly be part of the Government's case.  (Rec. doc. 65 at p. 18).  In responding to this concern, counsel for the Government stated categorically that only two call centers, those in South Carolina and California, are subject of the indictment.  (*Id.* at pp. 20-21).  The other call centers or locations where referrals originated (including those in the Philippines and "DMI,") are, according to Government counsel, "not the subject of this indictment, unless [Defendants] bring it in somehow at trial." (*Id.*).

Based upon the foregoing, it appears to the Court that, as to the call center-related requests at least, the Defendants are already in possession of all of the information they have requested.

Turning to the request for the identity of co-conspirators of Marla Ricketts, defense counsel presents no authority or argument that convinces this Court that it should grant any special relief outside the standing requirements of Rule 16, *Brady*, *Giglio*, and the Jencks Act. The Government convincingly argued at the hearing that:

> There's just no Fifth Circuit law that they have cited that supports their entitlement to the identities of co-conspirators. As long as we have got a -- as long as we have a crime charged, and we have witnesses that testify at trial, and we comply with our duties under *Brady*, *Giglio* and *Jencks*, there is nothing that entitles them to the identity of those witnesses.

(*Id.* at p. 30).

The Court agrees. The identity of co-conspirators in this particular case is no different in kind than any other information that the Government is required to disclose under Rule 16, *Brady*, *Giglio*, and Jencks and the Court will do no more vis-à-vis this request than order the Government to comply with those obligations.

Finally as to this motion, the Defendants request "a list of every payment by the defendants or Care Concepts or Choice which the government alleges constitutes an illegal kickback." In brief, the Government responded:

> The indictment specifies specific overt acts constituting illegal kickbacks. *See* Rec. Doc. 1 at 11-12. The information provided in the indictment is specific enough to permit the defendants to easily identify the beneficiary, the call center operators, and the claim. Nothing in FED.R.CRIM.P.12 and 16 requires the Government to provide any other information to the defendants and the defendants have provided no authorities supporting such a request.

(Rec. doc. 58 at p. 9).

At the hearing, counsel for the Government stated as follows concerning the Defendants' request for specific information regarding kickbacks:

10

> For a [section] 371 conspiracy, to pay and receive illegal kickbacks, you have to give overt acts. The overt acts are the kickbacks.
>
> On the other hand, the call centers were incentivized, their people were incentivized on a routine basis. And there were times when [Defendant] Sunny Kim would take 100 dollar bill and put it down in front of somebody and say, "If you get three or so referrals today, you get to keep that 100 dollar bill." That is the stuff we're developing on a daily basis.

(Rec. doc. 65 at p. 28).

Despite the Government's reference in both the pleadings and at the hearing to "kickback<u>s</u>" [plural] being alleged in the indictment, the Court's review of the cited pages reveals but one specific alleged kickback, in Count Two: "Conspiracy to Commit Health Care Kickbacks (18 U.S.C. § 371)":

> 44. On or about December 2, 2011, GEOFFREY RICKETTS, on behalf of Care Concepts, wrote a check to the manager of the call center in Sumter, South Carolina, in the amount of $2,525 in illegal kickbacks for the referral of medically unnecessary DME fraudulently billed to Medicare.

(Rec. doc. 1 at p. 12).

This is the only "kickback" specifically alleged against any Defendant and it is not alleged against Sunny Kim, who was the only defendant cited in the example given by the Government at the hearing. It is not altogether clear, then, whether there are additional alleged kickbacks being relied upon by the Government in its prosecution of these Defendants, but that certainly seems to be the case, given the reference by Government counsel at the hearing to Sunny Kim's alleged activities and "stuff we're developing on a daily basis." This all leads the Court to conclude there is more to the kickback count than what is stated in the indictment.

If this is the case (and the Court does not know whether it is), that information is surely material to the defense and should be produced under Rule 16 as it is developed "on a daily basis." If it has already been so developed, the information should be produced forthwith.

The Court notes the Government's argument here that the Defendants' request for this information is no more than a request for a bill of particulars. If the Government had not so specifically alleged <u>one</u> kickback in the indictment, that argument might be more convincing. However, given that the Government apparently recognized a need for a certain level of specificity as to the one kickback alleged in paragraph 44, similar specificity is appropriate if and when the Government develops additional alleged kickbacks upon which it will rely at trial.

For the foregoing reasons, to the extent that the Government develops additional alleged kickbacks upon which it intends to rely at trial, the Defendants' motion is **granted** as to that information.

IV.    Motion to Compel Return of Privileged Documents

The final motion under consideration is Defendants' motion to compel the return of privileged documents apparently shared with the Government pre-indictment by Defendants' prior counsel. (Rec. doc. 47). According to the Defendants' brief, after their current counsel were retained in the case, they learned from the Government that their prior counsel, referred to as "Attorney CM," had previously shared with the Government a number of documents that were subject to the attorney-client privilege. (*Id.*). These documents, according to Defendants:

> included numerous correspondences and work product by civil attorneys previously engaged by Care Concepts over 2011-

12

> 2013. These civil attorneys specialized in Medicare regulations and health care compliance. The documents revealed the thought processes, conclusions, and analysis of these attorneys in examining and discussing the issues related to Care Concepts' Medicare compliance. Clearly, the analysis of the compliance hazards constituted legal advice. It is also clear that this is the type of information that never would have been disclosed in any company's, let alone Care Concepts', filings with Medicare.
>
> (*Id.* at p. 2).

Upon learning of this prior disclosure of apparently privileged documents, in correspondence dated June 9, 2014 (one year prior to the indictment in this case being returned), successor defense counsel sought the following from the Government:

> . . . [W]e hereby request that the Government submit all of the documents which were produced to the Government by [CM] and her associates to the Government's clean team, that the clean team identify and separate all of the documents which contain attorney-client privileged communications between Geoffrey Ricketts and any of the attorneys listed in paragraph 1, that all of the documents containing these privileged communications be returned immediately to Geoffrey Ricketts, and that the Government not use any of the documents containing privileged communications either directly or indirectly in its investigation of Geoffrey Ricketts.
>
> (Rec. doc. 47-1 at p. 3).

Defendants' brief details ongoing efforts by their counsel after this letter was sent to have the Government segregate and return the subject documents. (*Id.*). These attempts were unsuccessful up to and continuing beyond the date of the indictment, June 11, 2015. (*Id.*). Subsequent to the indictment being returned, and after further efforts to have the Government return the documents were rebuffed, Defendants filed the instant motion.

In their motion, the Defendants argue that, while prior counsel shared the subject documents with the Government during pre-indictment negotiations, she did so without Defendants' knowledge or authorization. Notably, Defendants attached to their motion

13

affidavits executed by each named Defendant affirming under oath that none of them were advised by Attorney CM that she intended to waive or had waived the attorney-client privilege as to these documents, that they did not authorize her to waive the privilege, and that they did not know she had done so. (Rec. doc. 47-2).

The Government resists return of the documents on the basis that Attorney CM's affirmative use of the documents in pre-indictment negotiations effectively waived any privilege[7] that may attach to them. Attorney CM's conduct was distilled by the Government as follows:

> During multiple meetings with numerous participants over the course of several months, [CM] consistently expressed a desire and intent to provide information and materials concerning communications between Care Concepts, its executives, and counsel. Specifically, [CM] requested a meeting with the Government in November 2013, shared contents of attorney-client communications verbally twice in December 2013, provided the Government a detailed follow-up letter highlighting her intent to produce materials that included attorney-client communications in mid-December 2013, and then, finally, produced the communications themselves in January 2014. This production was in no means accidental or otherwise an oversight.

(*Id.* at p. 7).

The real issue here, as illustrated by the attachment of Defendants' affidavits to their motion, is not whether the disclosure of the documents was accidental or an oversight (there is no evidence to support such an argument in any event), but whether that disclosure under the particular circumstances of this case can and should constitute a waiver if it was done without the Defendants' knowledge or permission.

---

[7] For purposes of this motion, the Government does not dispute that the subject documents are privileged. (Rec. doc. 56 at p. 5 n.7).

The Government argues first that the Court should view as "dubious" the substance of the affirmations made by Defendants that they did not authorize or know about the disclosure by prior counsel. The Government is certainly free to demonstrate skepticism or to simply disbelieve Defendants' statements, but for the Court to do so would require it to make a credibility judgment on the uncontroverted sworn statements of the Defendants. The Court declines this invitation. The uncontroverted evidence in the record establishes that the Defendants did not authorize or know about the disclosure.

What then is the effect of such a disclosure? The Government relies somewhat heavily on the case *In re Grand Jury Investigation of Ocean Transportation* as support for the notion that "[p]rivilege claims cannot be reopened by retaining new counsel who read the privilege rules more broadly than did their predecessor." 604 F.2d 672, 675 (D.C. Cir.), *cert. denied*, 444 U.S. 915, 100 S.Ct. 229 (1979). A brief discussion of that decision is warranted here.

In *Ocean Transportation*, successor counsel sought the return of documents that predecessor counsel had voluntarily produced after being expressly authorized by his client to produce documents but to "withhold from production all documents which were felt [by counsel] might be covered by the attorney-client privilege." *Id.* at 674. Prior counsel produced two sets of documents – one with no markings at all and another marked with the letter "P." *Id.* As to the first group, the court found an unequivocal waiver:

> Original counsel's responsibility was to determine the privileged status of Sea-Land's documents. Its decisions in this regard were binding on its client. Privilege claims cannot be reopened by retaining new counsel who read the privilege rules more broadly than did their predecessor.

*Id.*

As to the second group, the Court noted that, upon receipt of documents marked "P," the government, thinking something "might be amiss," promptly inquired of counsel whether he had inadvertently produced what he thought were privileged documents. *Id.* Noting that counsel "explicitly, even though mistakenly, advised that the documents were intended to be disclosed," the Court found that, because counsel "acted within the scope of authority conferred upon it," *i.e.* to determine whether documents were privileged before disclosing them, the privileged had been waived. *Id.* at 675.

Notable to this Court with regard to the present matter, the *Ocean Transportation* Court also observed: "Perhaps this [] rule should not be strictly applied to all cases of <u>unknown</u> or inadvertent disclosure; this, however, is not a case where any such exception would be appropriate." *Id.* (emphasis added).

In a reply memo filed prior to the hearing, Defendants take issue with the supposed applicability of *Ocean Transportation*, noting that a subsequent Court criticized that decision as "an 'isolated, decades-old decision [that] involved unique circumstances.'" (Rec. doc. 62 at p. 2)(citing *In re Sealed Case*, 716 F.3d 603, 610 (D.C. Cir. 2013), *cert. dismissed*, ___ U.S.___ 134 S. Ct. 1535 (2014)). This Court's examination of the case cited by Defendants for this proposition reveals that the *In re Sealed Case* Court was criticizing the *Ocean Transportation* case for reasons entirely irrelevant to this matter, having to do with appellate jurisdiction over interlocutory orders. *See* 716 F.3d at 610. The quoted statement is not germane to the present matter <u>in any way</u> and should not have been cited by Defendants as being such.

In any event, the result in *Ocean Transportation* is not dispositive of this matter because the record here indicates that Attorney CM was not authorized to cull privileged documents before producing them in the same manner as the attorney in the former case,

16

who was operating on the express authority granted to him for that purpose. Moreover (and perhaps more important), the evidence here establishes that none of the Defendants even knew their prior counsel intended to or did produce the documents. These circumstances call to mind then the qualifying language of the *Ocean Transportation* Court cited earlier: "Perhaps this [] rule should not be strictly applied to all cases of <u>unknown</u> or inadvertent disclosure."

Indeed, at least one subsequent Court has observed the same concern where the evidence might suggest a lack of knowledge of disclosure by a defendant. While that Court followed the "logic" of *Ocean Transportation*, it did so "[i]n the absence of a presentation demonstrating that [] counsel was not authorized to claim and waive privilege. . . ." *Hollister Inc. v. E.R. Squibb & Sons, Inc.*, No. 84-CV-1987, 1988 WL 129988 (N.D. IL Dec. 1, 1988). Here there is no such absence; there are express sworn statements in the record disclaiming knowledge or authorization of these disclosures by Defendants.

While somewhat of a close call, the record in this matter supports return of the documents on the basis that the Defendants neither knew of nor authorized the disclosure of these privileged communications by prior counsel. While the Court will order immediate return of the documents, it makes the following closing observations.

First, while the Government objects that Defendants' motion seeks to have the disputed documents "expunged from the Government's records and memory," this Court orders only the former, not only because it is powerless to order the latter but because the Government had every right to operate initially on the assumption that the disclosures by Attorney CM were authorized by her clients.

Second, and relatedly, the Court does not credit the argument by Defendants that there was anything unethical or otherwise nefarious in the Government's receipt, retention or use of the documents, given the circumstances in which they were presented to the Government by Attorney CM. The Court accepts that the Government acted in good faith in relying upon the apparent authority of Attorney CM in its conduct vis-à-vis these documents, but that reliance and the appearance created by Attorney CM's conduct in interacting with the Government cannot, in this Court's view and in light of the record evidence, effect a waiver of the attorney-client privilege, which is Defendants' alone to waive.

For the foregoing reason, the motion to compel return of privileged documents is **granted**. The documents should be returned to Defendants' counsel within 14 days of this order.

New Orleans, Louisiana, this  29th  day of  December , 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE